### In re SKOGLUND.

No. 10409.

District Court, D. Minnesota, Fourth Division.

July 1, 1942.

Gilbert Carlson and D. J. Shama, both of Minneapolis, Minn., for petitioner.

Victor E. Anderson, U. S. Atty., and John W. Graff, Asst. U. S. Atty., both of St. Paul, Minn., for the Government.

JOYCE, District Judge.

This matter is before the court upon the objections of the Government to the petition for naturalization of Carl Skoglund. Hearing was had on March 14, 1942, at which time Mr. Gilbert Carlson and Mr. D. J. Shama appeared on behalf of the petitioner, and Mr. John W. Graff, Assistant United States Attorney for the District of Minnesota, appeared on behalf of the Government. A brief was thereafter filed by Government counsel. Petitioner's counsel waived filing of brief.

The petition for naturalization was filed October 10, 1940, under Section 2 of the Act of September 22, 1922, as amended by the Act of May 24, 1934 (48 Stat. 797), 8 U.S.C.A. § 368. It was heard by a designated Naturalization Examiner, who found that under Section 305 of the Nationality Act of 1940, 8 U.S.C.A. § 705, petitioner was not entitled to naturalization in that within the period of ten years prior to the filing of the petition, "the petitioner was a member of an organization, to-wit, the Socialist Workers Party, which believes in, advises, advocates, and teaches the overthrow by force or violence of the Government of the United States, or of all forms of law; and further, that the petitioner is not attached to the principles of the Constitution of the United States in that, in his views, he believes in and advocates the expropriation of private property without compensation." He recommended that the petition be denied.

After these findings and recommendation were made but before the matter was heard by the court, the petitioner with other defendants was indicted, tried and convicted in this court on the charge of violat-ing the provisions of the so-called Smith Act, enacted by Congress in 1940, in that they advocated the overthrow by force of the Government of the United States and conspired to create insubordination in its armed forces. This case is now pending on appeal in the Circuit Court of Appeals of this circuit.

It appears from the testimony taken before the Examiner that petitioner was born in Sweden April 7, 1884; that he came to the United States in 1911 and since May, 1911, has resided in the City of Minneapolis, Minnesota. He joined the Socialist Party in 1914 and remained a member until 1919. He joined the Communist Party in 1921 and was a member until 1928 when he with others was expelled. Those expelled formed the Communist League of America, a so-called Trotskyite organization, and petitioner was a member of the executive board until it merged with the Workers Party of America in 1930, of which he was a member until 1934, when it disbanded. About 1935 the Socialist Workers Party of America was formed, Skoglund being a founder and a member of the national committee. He stated that he remained a member of that party until about January, 1939, and that at the time of filing his petition herein he was not a member thereof. The Declarations of Principles and Constitution of the Socialist Workers Party are contained in a lengthy document attached to the Examiner's report. The following excerpts are characteristic of the general nature and tenor of its beliefs and aspirations:

Article II of its Constitution states the purpose of the Party to be "to educate and organize the working class for the abolition of capitalism and the establishment of a Workers Government to achieve socialism".

From the Declarations of Principles:

"We call upon all revolutionary militants to join with us to build the S. W. P. into the mass revolutionary party which will lead the working class of the United States to power; and which, together with the revolutionists of all countries united in the Fourth International, will achieve the victory of the international revolution and of world socialism.

"The main specific task of the S. W. P. is the mobilization of the American masses for struggle against American capitalism, and for its overthrow. To this end the

436

Party will seek to win the support of the industrial and agricultural workers by its activity within their mass organizations and to establish an alliance between the workers and farmers and other sections of the middle class ready and able to join Labor in a struggle against the big capitalist class. * * * While relying primarily on mass actions, propaganda and agitation as the means for furthering its revolutionary aim, the Party will also participate in electoral campaigns, though at all times contending against the fatal illusion that the masses can accomplish their emancipation through the ballot box. * * * The Party will endeavor constantly to educate the militant workers in the principles of revolutionary Marxism.

"If, in spite of the efforts of the revolutionists and the militant workers, the U. S. government enters a new war, the S. W. P. will not under any circumstances support that war but will on the contrary fight against it. The S. W. P. will advocate the continuance of the class struggle during the war regardless of the consequences for the outcome of the American military struggle; and will try to prepare the masses to utilize the war crisis for the overthrow of U. S. capitalism and the victory of socialism."

From the Socialist Appeal, official weekly organ of the Socialist Workers Party, Section of the Fourth International, June 29, 1940: "But make no mistake about it, our opposition is not that of pacifists. We've got nothing but contempt for the sniveling crew of pacifists, who tell the workers never to use force and even condemn a militant picket line as incompatible with pacifism. * * * We believe in the good strong arm of Labor and we want to see it used. We would like to see every worker become an expert in the use of arms so that he can best defend the interests of the working class."

The nationality laws of the United States were revised and codified into an act approved October 14, 1940, cited as the Nationality Act of 1940. The provisions of this act were not effective until ninety days after its passage. Section 347(b), 8 U.S. C.A. § 747(b), provides that: "Any petition for naturalization heretofore filed which may be pending at the time this act [chapter] shall take effect shall be heard and determined within two years thereafter in accordance with the requirements of law in effect when such petition was filed."

The within petition, having been filed October 10, 1940, would therefore not be subject to the provisions of the 1940 statute, and insofar as the Examiner based his findings on the assumption that the 1940 statute was controlling, I am not in accord therewith. However, there has been no modification of the substantive law with reference to persons inadmissible to citizenship as defined in Section 364, 8 U.S. C.A., effective at the time of petitioner's filing. This section was replaced by Section 305 of the Act of 1940, which is to the same effect though more explicit, the provisions of the later act being applicable to any petitioner who within ten years was within the class enumerated. Section 364 provides as follows: "No person who disbelieves in or who is opposed to organized government, or who is a member of or affiliated with any organization entertaining and teaching such disbelief in or opposition to organized government * * * shall be naturalized or be made a citizen of the United States."

Petitioner stated before the Examiner that he ceased to be a member of the Socialist Workers Party in about January, 1939. This statement, however, is not borne out by the evidence introduced in the so-called seditious activities case, heretofore referred to, which it was stipulated by counsel might be regarded as testimony adduced in the instant matter. It appears from the record in that case that up to early in 1940 the petitioner was a member of the Minneapolis branch of the S. W. P. (R. 133), and that as late as January and February, 1941, he attended meetings, participated in discussions regarding policies, and with others made statements concerning the setting in play of forces that would lead to a revolution (R. 736, 737). Other than by his plea of not guilty, no denial by petitioner of these charges appears in the record. In short, petitioner since coming to the United States has displayed by his activities and contacts an attitude which seems to be at cross purposes to organized and constituted authority, which was demonstrated up to the time of his indictment and trial in the above mentioned case. I do not believe that he has sustained the burden of proof which rests on him of establishing that he has fulfilled the conditions requisite to naturalization, or that he has been "during all the period required by law (at least five years preceding the application), attached to the principles of the Con-

stitution of the United States, and well disposed to the good order and happiness of the same." See Tutun v. United States, 270 U.S. 568, 46 S.Ct. 425, 70 L.Ed. 738, and United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889. One could not consistently profess attachment to the principles of the Constitution while at the same time advocating principles having for their ultimate end its overthrow and the establishment of a "Workers State" which would expropriate and socialize, without compensation, "all supplies and services that the revolutionary government finds it necessary to take over in order to lay the foundations of a socialist society."

The recommendation of the Examiner is hereby sustained and the petitioner's application for naturalization is denied. An exception is granted the petitioner.